# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM HARPER, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:16-CV-00669-MHH |
| NANCY BERRYHILL, Acting Commissioner of the Social Security Administration, | } |
| Defendant. | } |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), plaintiff William Harper seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied Mr. Harper's claims for a period of disability, disability insurance benefits, and supplemental security income. After careful review, the Court affirms the Commissioner's decision.[1]

## I. PROCEDURAL HISTORY AND BACKGROUND

Mr. Harper applied for a period of disability, disability insurance benefits, and supplemental security income on July 26, 2012. (Doc. 9-4, pp. 3-4; Doc. 9-7,

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. (*See* https://www.ssa.gov/agency/commissioner.html). Therefore, the Court asks the Clerk to please substitute Ms. Berryhill for Carolyn W. Colvin as the defendant in this action. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. Later opinions should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

pp. 2, 4). Mr. Harper alleges that his disability began on August 10, 2010. (Doc. 9-3, p. 48).[2] The Commissioner initially denied Mr. Harper's claims on October 25, 2012. (Doc. 9-5, pp. 8-17). Mr. Harper requested a hearing before an administrative law judge (ALJ). (Doc. 9-5, pp. 24-25). The ALJ issued an unfavorable decision on October 20, 2014. (Doc. 9-3, pp. 28-38). On April 12, 2016, the Appeals Council declined Mr. Harper's request for review (Doc. 9-3, p. 2), making the ALJ's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c).

## II. STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether substantial evidence in the record supports the ALJ's factual findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158

---

[2] Mr. Harper originally alleged that his disability began on November 10, 2007 (Doc. 9-7, pp. 2, 4), but he amended the date during his hearing with the ALJ. (Doc. 9-3, p. 48).

2

(11th Cir. 2004). In evaluating the administrative record, the Court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted). If substantial evidence supports the ALJ's factual findings, then the Court "must affirm even if the evidence preponderates against the Commissioner's findings." *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards. If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court will reverse the ALJ's decision, unless the error is harmless. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that he is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of

Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Mr. Harper has not engaged in substantial gainful activity since August 10, 2010, the alleged onset date. (Doc. 9-3, p. 30). The ALJ determined that Mr. Harper suffers from the following severe impairments: degenerative disc disease and obesity. (Doc. 9-3, p. 30). Based on a review of the medical evidence, the ALJ concluded that Mr. Harper does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 9-3, p. 31).

In light of Mr. Harper's impairments, the ALJ evaluated Mr. Harper's residual functional capacity or RFC. The ALJ determined that Mr. Harper has the RFC to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and carry ten (10) pounds occasionally and less than ten (10) pounds frequently; sit for six (6) hours in an eight-hour (8-hour) workday; stand and walk for two (2) hours in an eight-hour (8-hour) workday; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, kneel, and crawl; never reach overhead; should avoid all

4

exposure to workplace hazards such as dangerous machinery and unprotected heights; avoid concentrated exposure to temperature extremes; avoid prolonged or repetitive rotation, hyperextension, and flexion of the neck; and can maintain attention and concentration for two-hour (2-hour) periods at a time, notwithstanding pain.

(Doc. 9-3, p. 31).

Based on this RFC evaluation, the ALJ concluded that Mr. Harper is not able to perform his past relevant work. (Doc. 9-3, p. 36). Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Mr. Harper can perform, including dowel inspector, cuff folder, and button reclaimer. (Doc. 9-3, p. 37). Accordingly, the ALJ determined that Mr. Harper is not disabled within the meaning of the Social Security Act, and the ALJ denied Mr. Harper's claim for benefits. (Doc. 9-3, pp. 37-38).

## IV. ANALYSIS

Mr. Harper argues that he is entitled to relief from the ALJ's decision because the ALJ did not give appropriate weight to the testimony of three examining consultative physicians, and the ALJ improperly discredited Mr. Harper's subjective pain testimony. The Court disagrees.

### A. Substantial evidence supports the ALJ's evaluation of the medical opinion evidence.

Mr. Harper argues that when the ALJ evaluated his residual functional capacity, the ALJ failed to give appropriate weight to the opinions of three

consultative examiners: Dr. Adam Nortick, Dr. Emmanuel Odi, and Dr. Richard Harris. (Doc. 16, pp. 3-11). When determining a claimant's RFC, an ALJ must weigh the evidence and resolve material conflicts in testimony. *See* 20 C.F.R. §§ 404.1546(c) & 416.946(c); *Battle v. Astrue*, 243 Fed. Appx. 514, 523 (11th Cir. 2007); *Walker v. Bowen*, 826 F.2d 996, 1000 n.1 (11th Cir. 1987). An ALJ does not adopt the opinion of any one medical source but instead considers the totality of the evidence in arriving at a conclusion on the ultimate question of disability. *See* 20 C.F.R. §§ 404.1527(b)-(c) & 416.927(b)-(c); *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

When weighing medical testimony, an ALJ generally gives more weight to the opinion of a source who examined the claimant. *See* 20 C.F.R. §§ 404.1527(c)(1) & 416.927(c)(1). Medical opinions from treating sources usually carry the most weight because these sources are able to provide a detailed, long-term picture of a claimant's medical conditions. 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). In contrast, an ALJ need not give special deference or weight to the opinions of non-treating, one-time examiners. *Crawford*, 363 F.3d at 1160 (holding that, in general, the opinion of a one-time examining physician is "not entitled to great weight") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)); *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 Fed. Appx. 521, 523 (11th Cir.

6

2014) ("The ALJ owes no deference to the opinion of a physician who conducted a single examination . . . ."). An ALJ may discount a doctor's opinion when the opinion is conclusory, the doctor fails to provide objective medical evidence to support an opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. §§ 404.1527(c) & 416.927(c); *Phillips*, 357 F.3d at 1240-41.

As the ALJ noted in her opinion, Mr. Harper has been treated for back pain since 2007. (Doc. 9-3, p. 32). A number of Mr. Harper's medical records appear in the administrative record. (Doc. 9-10, pp. 3-4, 9-13, 15-23; Doc. 9-11, pp. 18-21, 25-26, 62-65, 67-78; Doc. 9-14, pp. 13-14, 19-20, 27-33, 43-61, 64-71; Doc. 9-15, pp. 27-36, 55-62, 65-83, 86-87; Doc. 9-16, pp. 4-59). Although treating physicians consistently have found that Mr. Harper suffers from back pain, the physicians generally have recommended conservative treatment, and none imposed physical restrictions.[3]

---

[3] In June 2008, Dr. Stan Stehr encouraged Mr. Harper to complete a charity care application so that an orthopedic surgeon could see Mr. Harper and recommend treatment options. (Doc. 9-11, p. 72; Doc. 9-14, p. 48). Otherwise, Dr. Stehr explained that he could provide Mr. Harper a referral to a pain clinic for treatment options for his back pain. (Doc. 9-11, p. 72; Doc. 9-14, p. 48).

In January 2009, Mr. Harper saw Dr. Stehr and requested a surgical evaluation. (Doc. 9-11, p. 69; Doc. 9-14, p. 43). Dr. Stehr noted that Mr. Harper had had "limited success with medical management," finding little relief from two epidural injections. (Doc. 9-11, p. 69). Dr. Stehr also noted that Mr. Harper was not using prescription medication for his back, but he occasionally used marijuana. (Doc. 9-11, p. 69). Dr. Stehr stated that he would "refer Mr.

The administrative record in this case also contains opinions from the three consultative examiners who Mr. Harper identified and from a state agency consultant. The four opinions run the gamut. The ALJ's selection of a sedentary RFC with a host of limitations reflects a reconciliation of the conflicts in these four opinions, and substantial evidence supports the RFC.

Dr. Odi, one of the three consultative physicians, examined Mr. Harper on August 24, 2011. (Doc. 9-14, pp. 98-102). Mr. Harper rated his pain as 10/10. Mr. Harper reported that he was unable to sit for more than 30 minutes or stand for more than 10 minutes without experiencing what he described as excruciating pain; however, Mr. Harper also reported that he did not take strong pain medication. (Doc. 9-14, p. 98). Dr. Odi noted that Mr. Harper had significant tenderness, normal range of motion except in the dorsolumbar spine, walked with a slow limping gait, and used a cane. (Doc. 9-14, pp. 99-102). Dr. Odi indicated that Mr.

---

Harper for surgical evaluation of his symptoms and possible treatment options," and Dr. Stehr prescribed Ultram for pain treatment. (Doc. 9-11, p. 70; *see also* Doc. 9-14, p. 44).

In July 2009, Dr. Robert Brunner examined Mr. Harper and consulted with Dr. Stehr. The record from that visit indicates that Dr. Brunner or Dr. Stehr would refer Mr. Harper to neurosurgery "for an evaluation and possible surgical options for his chronic back pain." (Doc. 9-14, p. 20). The record states that a March 2009 MRI indicated a slight disc bulge at L5-S1, but the physician indicated that it was "unlikely" that the minimal bulge could "completely account" for all of Mr. Harper's symptoms. (Doc. 9-14, p. 20). The record indicates a continuation of the Ultram prescription and the addition of a prescription for Robaxin. (Doc. 9-14, p. 20).

The Court has not located in the record a recommendation from a physician that Mr. Harper have surgery to treat his back pain.

8

Harper was limited in his ability to sit and stand due to chronic severe low back pain and that this pain would prevent gainful employment. (Doc. 9-14, p. 100). The ALJ assigned little weight to Dr. Odi's opinions based on her determination that Dr. Odi's opinions are inconsistent with his findings and with the objective medical evidence of record as a whole. (Doc. 9-3, p. 34).[4]

Dr. Harris, an orthopedic surgeon, also examined Mr. Harper but did not treat him. During the December 19, 2013 examination, Dr. Harris found that Mr. Harper had full range of motion except in the lumbar spine, 5/5 muscle strength in the upper and lower extremities, hypoactive reflexes in his upper extremities, tenderness in his lumbar spine, a slow gait, difficulty walking on his toes and heels, and difficulty squatting and rising. (Doc. 9-17, p. 13).[5] Dr. Harris observed that Mr. Harper exaggerated his symptoms on the range of motion testing. (Doc. 9-17, p. 13). Dr. Harris diagnosed Mr. Harper with mild cervical and lumbar degenerative arthritis with evidence of symptom magnification. (Doc. 9-17, p. 13). He opined that Mr. Harper did not require a cane to ambulate and stated that Mr.

---

[4] Dr. Odi's opinion that Mr. Harper could not obtain or maintain gainful employment constitutes an opinion on an issue reserved for the Commissioner. Therefore, the opinion is not entitled to special weight or deference. *See* 20 C.F.R. §§ 404.1527(d)(3) & 416.927(d)(3).

[5] Consistent with the Court's assessment of the medical records from Mr. Harper's treating physicians (*see* note 3 above), Dr. Harris noted that Mr. Harper had had no surgery for his back, and Dr. Harris reported that Mr. Harper stated that surgeons had told him that he was too young to have surgery. (Doc. 9-17, p. 13).

Harper was capable of sedentary work. (Doc. 9-17, pp. 13, 15). The ALJ assigned some weight to Dr. Harris's opinion.[6]

The ALJ gave significant weight to an evaluation from Dr. Whitney, a state agency medical consultant who, in September 2011, reviewed Mr. Harper's medical records but did not examine him. (Doc. 9-3, p. 35; *see* Doc. 9-15, pp. 2-9). Dr. Whitney noted an April 2011 MRI which showed mild degenerative disc disease causing mild foraminal stenosis; however, Dr. Whitney also stated that there was no objective physical evidence that Mr. Harper should be as limited as Dr. Odi indicated. (Doc. 9-15, pp. 3-4). Dr. Whitney concluded that Mr. Harper retained the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently, to stand and walk for up to 6 hours each day, and to sit for an unlimited amount of time during an 8-hour workday. (Doc. 9-15, p. 3). The ALJ gave more weight to Dr. Whitney's opinions because the ALJ determined that the objective medical evidence on the whole did not fully support the examining physicians' assessments. *Wainwright v. Comm'r of Soc. Sec.*, 2007 WL 708971 at *2 (11th

---

[6] Mr. Harper argues that Dr. Harris recommended numerous work limitations inconsistent with sedentary work, including an inability to sit, stand, or walk for more than 15 minutes at a time and an inability to work more than a total of 4 hours in an 8-hour workday. (Doc. 9-17, p. 15). Dr. Harris identified no objective medical or clinical findings to support these limitations. (Doc. 9-17, pp. 14-19). Because Dr. Harris's assessment of Mr. Harper's limitations, like Dr. Odi's, was not supported by the objective medical evidence as a whole, the ALJ gave "only some weight" to Dr. Harris's opinion. (Doc. 9-3, p. 34).

Cir. Mar. 9, 2007) (concluding that the ALJ could reject the opinion of an examining psychologist because the opinion was contrary to the opinions and assessments of the state agency psychologists); *see generally Vuxtra v. Comm'r of Soc. Sec.*, 194 Fed. Appx. 874, 876 (11th Cir. 2006) (stating that the ALJ must consider non-examining state agency physicians' opinions).

The ALJ did not assign weight to a report from Dr. Nortick, the third consultative physician who examined Mr. Harper. Dr. Nortick examined Mr. Harper 13 months before Mr. Harper's alleged onset date of August 10, 2010. Based on the July 2009 examination, Dr. Nortick concluded that Mr. Harper had degenerative disc disease in the thoracic spine, lumbar recess stenosis, lumbar disc protrusion with abutment of the nerve root, lumbar back pain, and lumbar radicular pain. (Doc. 9-10, p. 42). Dr. Nortick also assessed Mr. Harper's ability to perform certain common activities, and he concluded that Mr. Harper could lift 21-50 pounds occasionally, lift 11-20 pounds frequently, and lift up to 10 pounds continuously, carry up to 10 pounds occasionally, and walk with a cane because of an unsteady gait, leaving one hand available for carrying; sit for 1 hour at a time, stand for 15 minutes at a time, and walk for 15 minutes at a time; and during the course of an 8-hour workday, sit for a total of 4 hours, walk for a total of 1 hour, and stand for a total of 1 hour. (Doc. 9-10, pp. 25-26). Dr. Nortick concluded that

11

Mr. Harper should never climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch; or crawl. (Doc. 9-10, p. 28).

The ALJ stated that she did not consider Dr. Nortick's opinion because, in the ALJ's view, the opinion was "too remote in time to consider." (Doc. 9-3, p. 34). The applicable regulations state that an ALJ has a duty to "develop [a claimant's] complete medical history for at least the 12 months preceding the month in which" the claimant files his application. 20 C.F.R. §§ 404.1512(b)(1), 416.912(d). That obligation does not preclude an ALJ from considering a medical opinion that predates an application date (or protective filing date) by more than 12 months. An ALJ must consider and assign weight to every medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) ("The ALJ may reject the opinion of any physician when the evidence supports a contrary conclusion," but the ALJ must "state with particularity the weight he gives to different medical opinions and the reasons why."). The Commissioner has not identified, and this Court has not located, authority that suggests that an ALJ may avoid the obligation to evaluate a

medical opinion and state the weight given to the opinion simply by designating the opinion "too remote in time."[7]

The Commissioner accurately points out that Dr. Nortick examined Mr. Harper in connection with Mr. Harper's previous application for Social Security benefits. (Doc. 19, p. 13; *see also* Doc. 9-10, p. 31, *compare* current July 2012 application date). The Commissioner argues that because Dr. Nortick's opinion relates to a period in which the Commissioner has found that Mr. Harper was not disabled, Dr. Nortick's opinion is "too remote in time." The "too remote in time designation" still has no legal significance and is not a sound basis for failing to evaluate Dr. Nortick's opinion.

The Commissioner's argument is better-framed as an argument concerning administrative res judicata. "Administrative res judicata applies when the agency has made a 'previous determination or decision . . . about [a claimant's] rights on the same facts and the same issue or issues, and this previous determination or decision [had] become final by either administrative or judicial action.'" *McKinzie v. Comm'r of Soc. Sec.*, 362 Fed. Appx. 71, 73 (11th Cir. 2010) (quoting 20 C.F.R. § 404.957(c)(1)). When evaluating a pending claim for benefits, an ALJ may consider evidence that was part of the administrative record for a prior application

---

[7] An ALJ may give an opinion less weight when the opinion predates the claimant's benefits application by a significant period of time, but the ALJ still must articulate the weight she assigned to the opinion or identify a legitimate basis for refusing to evaluate the opinion.

without reopening the prior decision and running afoul of the concept of administrative res judicata. *Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). An ALJ may use evidence contained in a prior administrative record to identify "preliminary facts required to assess rationally the question at issue, *i.e.,* whether [the claimant] was disabled at the time of the second application." *Rohrich v. Bowen*, 796 F.2d 1030, 1031 (8th Cir. 1986) (stating that ALJ properly summarized medical examinations from 1978, 1979, and 1980 relating to prior application for benefits for purposes of evaluating 1982 application for benefits) (cited with approval in *Wolfe*).[8] An ALJ also may examine evidence from a prior administrative record to determine the res judicata effect of the evidence with respect to the latter, pending application. *Wolfe*, 86 F.3d at 1078-79. An ALJ crosses the line and reopens a prior administrative decision when the ALJ evaluates the merits of the prior disability determination. *Wolfe*, 86 F.3d at 1079.[9]

---

[8] *See also Hamlin v. Barnhart*, 365 F.3d 1208, 1223 n. 15 (10th Cir. 2004) ("While these medical reports date from an earlier adjudicated period, they are nonetheless part of Mr. Hamlin's case record, and should have been considered by the ALJ."); *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed. Appx. 411, 414 (6th Cir. 2006) ("We do not endorse the position that all evidence or medical records predating the alleged date of the onset of disability, or evidence submitted in support of an earlier proceeding, are necessarily irrelevant or automatically barred from consideration by *res judicata.* We recognize that evidence presented at an earlier hearing or predating the onset of disability, when evaluated *in combination with later evidence,* may help establish disability.") (emphasis in *DeBoard*).

[9] Dictum from an unpublished Eleventh Circuit opinion indicates that an ALJ is not required to consider evidence that was part of the administrative record for a previous disability application. *Luckey v. Astrue*, 331 Fed. Appx. 634, 640 n. 1 (11th Cir. 2007) ("We recognize the force of the

The Court need not decide whether the principle of administrative res judicata would apply to Dr. Nortick's opinion because the ALJ's failure to consider Dr. Nortick's opinion is harmless error. "An error is harmless if it does not affect the ALJ's ultimate decision." *Colon v. Colvin*, 660 Fed. Appx. 867, 869 (11th Cir. 2016) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). Dr. Nortick's opinion would not have changed the ALJ's decision because Dr. Nortick's opinion is most consistent with Dr. Odi's opinion, and, as stated, substantial evidence supports the ALJ's decision to give little weight to Dr. Odi's opinion. Considering the totality of the evidence, the opinions from Dr. Harris and Dr. Whitney still would carry the day if the ALJ were to factor Dr. Nortick's opinion into the equation.

Accordingly, under the circumstances of this case, the ALJ's failure to assign weight to Dr. Nortick's opinion does not warrant remand because "the correct application [of the regulations] would not contradict the ALJ's ultimate findings." *Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005). Substantial evidence supports the RFC for sedentary work.

---

argument that the ALJ was not required to consider [Dr.] Oatley's diagnoses because they pertained only to Luckey's previous disability application."). Under the *Luckey* dictum, an ALJ seems to have discretion to decide whether to consider medical evidence that was part of a prior administrative record.

**B. Substantial evidence supports the ALJ's evaluation of Mr. Harper's subjective pain testimony.**

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Comm'r of Social Sec.*, 600 Fed. Appx. 650, 656 (11th Cir. 2015) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam)). A claimant's testimony, coupled with evidence that meets this standard, "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted); *see also* SSR 96-7p, 1996 WL 374186.[10]

In this case, the ALJ determined that Mr. Harper's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Mr. Harper's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (Doc. 9-3, p. 32). The ALJ noted, for example, that despite Mr. Harper's complaints of disabling back pain,

---

[10] On March 28, 2016, SSR 16-3p superseded SSR 96-7p, the ruling concerning subjective complaints of pain that was in effect when the ALJ issued a decision in this case. SSR 16-3p, 81 Fed. Reg. 14166, 14167, 2016 WL 1237954. SSR 16-3p does not apply retroactively to cases such as this one. *Green v. Comm'r of Soc. Sec.*, 2017 WL 3187048 at *4 (11th Cir. July 27, 2017) (unpublished opinion).

his x-rays showed only mild cervical and lumbar degenerative arthritis. (Doc. 9-3, p. 32; *see also* Doc. 9-14, p. 96; Doc. 9-15, p. 4; Doc. 9-16, p. 6). The ALJ also noted that other than one emergency room visit in November 2013 where he appeared with a cane, Mr. Harper had not sought treatment for his back pain since 2012. (Doc. 9-3, p. 32; *see also* Doc. 9-17, p. 27-31); *see* SSR 96-7p, 1996 WL 374186, at *7 (noting that an individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints).

During the November 2013 emergency room visit, Mr. Harper tested positive for marijuana and the examining physician noted Mr. Harper's history with recreational drug usage. (Doc. 9-3, p. 32; Doc. 9-17, p. 29). Mr. Harper became angry, denied the marijuana use, and left before receiving his prescription for anti-inflammatory medication. (Doc. 9-17, p. 29). The treating physician indicated that Mr. Harper exhibited drug-seeking and malingering behavior. (Doc. 9-17, p. 29). The physician also observed that when exiting the hospital, Mr. Harper was ambulatory without weakness, and Mr. Harper carried his cane without difficulty. (Doc. 9-17, p. 29). Although Mr. Harper testified at the hearing that he was unable to afford treatment (Doc. 9-3, pp. 49-51), the ALJ stated that Mr. Harper could have used the money that he spent on recreational drugs to obtain pain treatment. (Doc. 9-3, p. 33); *see East v. Barnhart*, 197 Fed. Appx. 899, 904-

05 (11th Cir. 2006) (claimant's decision to purchase cigarettes with child support funds was a basis for discrediting the claimant's testimony that she could not afford her prescription medication); *Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (taking judicial notice of the cost of purchasing cigarettes in rejecting the plaintiff's claim that he could not afford the support hose prescribed for his thrombosis).[11]

The ALJ properly evaluated Mr. Harper's subjective complaints within the context of the record as a whole and adequately explained her reasons for rejecting Mr. Harper's pain testimony. *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) (concluding that the district court committed reversible error in overturning the ALJ's decision where the ALJ had adequately explained his reasons for discrediting the plaintiff's testimony); *Werner v. Comm'r of Soc. Sec.*, 421 Fed. Appx. 935, 939 (11th Cir. 2011) ("The question is not . . . whether the ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

## V.  CONCLUSION

For the reasons discussed above, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ applied proper legal standards.  The

---

[11] In *East*, the claimant did not challenge the ALJ's reasons for rejecting her pain testimony. *East*, 197 Fed. Appx. at 905.

18

Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 29, 2017.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE